IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>BERNARDO ALVAREZ RIOS and<br>GISELA GOMEZ LUGO<br><br>Debtor | CASE NO. 21-02376 (ESL)<br><br>CHAPTER 12<br><br>FILED AND ENTERED 9/30/2026 |

**OPINION AND ORDER**

This case is before the court[1] upon Debtors' *Motion for Authority to Sell Real Property Free and Clear of Liens Pursuant to 11 U.S.C. § 363* (the "**Sale Motion**", dkt. #148), the opposition filed by PR Recovery and Development REO, LLC ("**PR Recovery**")[2] (dkt. #155), the Debtors' reply (dkt. #162), and PR Recovery's sur-reply (dkt. #169).

For the reasons stated herein, the opposition (dkt. #155) is hereby GRANTED. Consequently, the *Sale Motion* (dkt. #148) is DENIED.

Factual and Procedural Background

1. This is the Debtors' third bankruptcy case; the two prior cases were dismissed. See Bankr. Case No. 14-01691, dkt. #1; Bankr. Case No. 17-05523, dkt. #1 (thereafter consolidated with Case No. 14-01690); Bankr. Case No. 21-02376, dkt. #1. See also Bankr. Case No. 14-01690, dkt. #44; Bankr. Case No. 17-05523, dkt. #208.

2. On December 7, 2021, the Debtors filed an *Amended Chapter 12 Plan – Dated December 7, 2021* (the "**Plan**", dkt. #65), which provides the following treatment for PR Recovery:

> **CLASS 3 PR RECOVERY REO LLC CLAIM #1**
> PR Recovery REO is a secured debt. The property with served as collateral have several mortgage promissory note encumbering, the following: Lot of land comprised of 3.00 cdas with a value of $130,000.00; Lot of land comprised of 3.0 cdas with a value of $21,000.00. The total amount of PR Recovery collaterals value is $57,000.00. In this case this creditor filed claim #1 for the sum of $566,317.94, but the collateral worth $57,000.00. The proof of claim will be objected to reduce

[1] The instant case was reassigned to this judge on August 28, 2025, after the Chapter 12 plan was confirmed.

[2] PR Recovery is the successor in interest of PR Recovery and Development JV, LLC, and Banco de Desarrollo Económico para Puerto Rico ("**BDE**").

> the secured portion to the value of the collateral and the secured portion that guaranties the same. As to this debt, Debtors' first property, which is the residence, guarantee the amount of $36,000; as for the second property, which is the lot of land, it is guaranteed for the amount of $ 533,000 but this property has a secured value of $ 21,000 according to appraisal. The same serve collateral of the loan, meaning that the secured portion below has $36,000 of the house and $21,000 for the second loan, for a total amount of $57,000.00., meaning that the reaming balance of the claim #1 $109,317.94 to be considered unsecured.
>
> **Debt Balance Restructuring Upon Confirmation:** As such, since a claim has been filed this class will be paid in the amount of $57,000.00 owed to creditor as a secured debt as follows:
>
> The monthly payments to be received by PR Recovery will be in the amount of $600.00 monthly for the five (5) years of the plan with a Lump Sum payment in month sixty-one (61) of $29,916.81. This monthly payment will be applied to the principal and interest for a period of sixty (60) month. The same will be at an interest rate of 4.00% and amortized over a period of five (5) years. This payment will be made through the Chapter 12 Plan and by the Chapter 12 Trustee. Payment number 61 will be made directly by debtor to creditor to pay off the remaining balance
>
> *At the end of the first 60-month period of the plan, debtors will made one additional payment for $29,916.81 to pay the remaining balance … This payment will be made by refinance of Debtors' residence through the private banks or by the government assistance.*
>
> …
>
> *If at any moment, Debtors decide to sell or refinance there will be no penalties as to the unpaid balance. Regarding the security agreements over personal property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan.* With the confirmation of the chapter 12 plan the third mortgage for the sum of $336,000.00 will be cancel and creditor will retain the first mortgage for the sum of $70,000.00 and the second mortgage for the sum of $90,000.00 as collateral of the properties, **See Exhibit Title Search**[.]
>
> …
>
> **Debtor will object proof of claim #1 of PR Recovery to pay just the value of the collateral as secured** …

dkt. #65, pp. 4-6 (boldface original; italics added). <u>See also</u> *Exhibit A* to *Plan* dkt. #65, pp. 10-11 (Payment Proposal).

3. After various procedural events, (i) Proof of Claim No. 1 filed by PR Recovery (the "**Claim**") was "allowed in the amount of $57,000.00 as secured and $509,317.94 as unsecured" (dkt. #115, p. 1), and (ii) the *Plan* was confirmed at the confirmation hearing held on

April 7, 2022 (id.), and via entry of an *Order Confirming Chapter 12 Plan* on April 11, 2022 (dkt. #116).

4. On April 10, 2026, the Debtors filed a *Sale Motion* (dkt. #148) requesting to sell a property located in Utuado, Puerto Rico (the "**Property**"), and encumbered by mortgage liens held by PR Recovery, to Isaac Ernesto Serrano Feliciano (the "**Buyer**") for $26,000.00, free and clear of all liens under 11 U.S.C. § 363(f). Attached to the *Sale Motion* are a property appraisal dated September 2021 valuing the property at $21,000 (dkt. #148-1, p. 3), a title study dated January 7, 2026 (dkt. #148-2), a statement of account from the Municipal Revenue Collection Center ("**CRIM**", by its Spanish acronym) (dkt. #148-3), and the option agreement (dkt. #148-4), among others.

5. The Property is described in the Spanish language as follows:

> RUSTIC: Parcel 12 located in the Angeles Ward of the Municipality of Utuado. It has an AREA of 3 cuerdas equivalent to 1 hectare, 17 areas, 92 centiareas, and 1868 thousandths of another. Boundaries: North: PARCEL 13 and MARIA AQUILINA TORRES; South: PARCEL 11; East, PARCEL 5; West: MARIA AQUILINA TORRES, TODAY ELADIA H. FRÍAS
>
> Property Number 9579 registered at page 10 of volume 212 of Utuado Registry of the Property of Utuado
>
> Cadastral number 187-000-001-26-001

dkt. #148, pp. 1-2, § III (Description of Property)

6. On May 1, 2026, PR Recovery filed an *Opposition to Debtors' Motion for Authority to Sell Real Property Free and Clear of Liens Pursuant to 11 U.S.C. § 363* (the "**Opposition**", dkt. #155) arguing that the confirmed "Plan does not propose to sell any property for the repayment of PR Recovery's Claim, and provides instead that PR Recovery will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as required in 11 U.S.C. § 1225(a)(5)(B)(i)" (dkt. #155, citing *Plan*, dkt. #65, p. 4), and stating that it does not consent to the sale of the Property. PR Recovery argues that the court lacks authority to grant the *Sale Motion* because Section 363 of the Bankruptcy Code is

no longer applicable after the confirmation, citing In re Tacoronte Ortiz, 2022 Bankr. LEXIS 3312, 2022 WL 17184654 (Bankr. D.P.R. Nov. 23, 2022). PR Recovery argues that although Tacoronte Ortiz was analyzed under the purview of 11 U.S.C. § 1141(b), 11 U.S.C. § 1227(b) (applicable to Chapter 12 cases) reads verbatim as 11 U.S.C. § 1141(b). PR Recovery argues also argues that even if Section 363 is somehow applicable, the Debtors have not alleged nor met their burden of compliance under Section 363(f).

7. The court ordered the Debtors to state his position to PR Recovery's opposition. See *Order*, dkt. #156.

8. On May 26, 2026, the Debtors filed a *Motion in Compliance With Court Order* (the "**Reply**", dkt. #162) averring that a lump sum payment at month 60 of the plan and the sale of property are contemplated under the terms of the confirmed *Plan*, and that although the *Sale Motion* was "styled … under 11 U.S.C. § 363(f), the proposed transaction was consistent with and in furtherance of the confirmed plan and the treatment previously negotiated between the parties" (id., ¶ 10), "[a]ccordingly, the requirements of § 363(f) are not controlling under the circumstances of this case" (id., ¶ 19). That is, Debtors do not contest the inapplicability of Section 363(f). Debtors argue that the Mortgage Law of Puerto Rico allows for partial releases and cancellations of mortgages affecting multiple properties under specific circumstances. According to Debtors "[p]ursuant to Article 175 of the Mortgage Law of Puerto Rico, 30 L.P.R.A. § 2571, when a mortgage is divided among several properties and a portion of the loan corresponding to one of the encumbered properties is paid, the debtor may demand a partial cancellation of the mortgage on that specific property. This provision allows the debtor to select which property is to be released, provided that the payment made is not less than the amount of the special liability assigned to that property. Even though the deeds of mortgage assign a mortgage liability in the amount of $36,000.00 over the property to be sold, the confirmed Amended Chapter 12 Plan expressly limited the treatment and assigned value of the property being sold to $21,000, consistent with the property's determined value. Accordingly, the amount expected to be realized from the sale of said property was never contemplated to exceed $21,000 under the confirmed

plan." (id., ¶ 21) (boldface removed). Debtors argue that the doctrine of *res judicata* bars PR Recovery from relitigating plan terms that became final and binding upon entry of the *Order Confirming Chapter 12 Plan*, which "valued Property #9579 at $21,000"and "allocated only $21,000 of PR Recovery's $57,000 total secured claim to this property, with the remaining $36,000 allocated to Debtors' residence" (id., ¶ 15). "The property being sold was separately valued under the confirmed plan at $21,000, and the proposed sale price of $26,000 exceeds that valuation" (id., ¶ 18). Debtors thus argue that the proposed sale benefit PR Recovery, "representing a 23.8% premium" (id., ¶ 24) and a "accelerates payment to PR Recovery compared to the plan's monthly payment schedule" (id., ¶ 26). Debtors further state that PR Recovery "will remain in possession of mortgage notes with an aggregate principal amount of $496,000, secured by valid and perfected liens against property 9497 in the amount of $460,000" (id., ¶ 32), and "[a]fter receiving the $26,000 sale proceeds, PR Recovery will have received a total of $54,800 ($28,800 in prior Plan payments plus $26,000 from the sale) toward its $57,000 allowed secured claim, leaving an unpaid balance of $2,200" (id., ¶ 35). With respect to PR Recovery's reliance on Tacoronte Ortiz, Debtors argue that although the "Tacoronte court addressed whether Section 363 applied to a post-confirmation transfer, but it did not address whether a plan provision explicitly authorizing sales provides independent authority for court approval of such sales (id., ¶ 47).

9. On June 10, 2026, PR Recovery filed a *Reply to Debtors' "Motion in Compliance With Court Order"* (the "**Sur-Reply**", dkt. #169) arguing that the *Sale Motion* relied exclusively on Section 363(f). With respect to the *Plan*'s alleged sale provision, PR Recovery argues that

> The single sentence on which the Debtors rely ('[i]f at any moment, Debtors decide to sell or refinance there will be no penalties as to the unpaid balance" (*Plan*, ECF No. 65, p. 5)) is a no-prepayment-penalty provision, not an authorization to strip PR Recovery's liens in exchange for a partial payment. By its own terms, the clause presupposes payment of "the unpaid balance". It says nothing about selling collateral free and clear of liens, releasing mortgages, or capping PR Recovery's recovery at a "plan valuation". Likewise, the *Plan* provides that the Month-61 lump sum payment "will be made **by refinance** of Debtors' residence through the private banks or by the government assistance", not through the sale of the property. *Plan*, ECF No. 65, p. 5 (boldface added).

> The argument that the confirmed *Plan* is final and binding upon all parties does not contradict PR Recovery's position, and does not give Debtors' *carte blanche* to rewrite it. Under 11 U.S.C. § 1227(a), the provisions of a confirmed plan bind the debtor and each creditor. The binding terms of this *Plan* are that PR Recovery retains its mortgages until full payment of its Secured Claim. The *res judicata* doctrine invoked by the Debtors (*Motion in Compliance*, ECF No. 162, pp. 3, 6, 9-11, ¶¶ 14, 23, 38-44) cuts squarely against them. It is the Debtors (not PR Recovery) who seek a remedy that the *Plan* simply does not provide. Enforcing a confirmed plan as written is not a collateral attack on it; rewriting it through a responsive brief is. That is precisely why they needed (and moved for) §363 relief, which, as previously discussed, is no longer available as a matter of law

dkt. #169, #169, ¶ 15 (emphasis original). PR Recovery also argues against the Debtors' request for a "partial cancellation" of PR Recovery's mortgages under Article 175 of the Mortgage Law of Puerto Rico, 30 L.P.R.A. § 2571, asserting that the act invoked was repealed, among other things.

## Applicable Law and Discussion

Section 363(f) of the Bankruptcy Code authorizes the trustee or debtor-in-possession to sell "property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate". 11 U.S.C. § 363(f). See also 11 U.S.C. § 1203 (rights and powers of debtor). The property identified for sale under subsection 363(b) and (c) is "property of the estate". See 11 U.S.C. § 363(b)(1), (c)(1). However, and in addition to the limitation set forth in subsections 363(f)(1) through (f)(5)[3], the bankruptcy court "may not authorize a sale free and clear of property that is not property of the estate." 3 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 363.06 (16th ed. 2026).

---

[3] Section 363(f) provides that: "The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

11 U.S.C. § 363(f)(1)-(5).

Generally, "[a] court may not authorize a sale free and clear after plan confirmation, as the property revests upon confirmation in the reorganized debtor *and is no longer property of the estate*, even though the plan provides for the court to retain jurisdiction to hear any applications to sell the property dealt with by the plan free and clear of liens." Id., at ¶ 363.06 (italics added) See also 11 U.S.C. § 1227 ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor"); In re Golf, L.L.C., 322 B.R. 874 (Bankr. D.Neb. 2004) (noting that Section 363(f) is used during the pendency of a bankruptcy case and before confirmation; post-confirmation sales of assets are accomplished pursuant to the terms of a confirmed plan, or pursuant to non-bankruptcy law); In re Tacoronte Ortiz, 2022 Bankr. LEXIS 3312, at *9, 2022 WL 17184654, at *3 (Bankr. D.P.R. Nov. 23, 2022) (holding, in the analogous Chapter 11 context, that a post-confirmation sale motion under § 363(f) was misplaced after property vested in the debtor).

In this case, the Debtors propose to invoke Section 363(f) post-confirmation. As noted, a bankruptcy court may not authorize a post-confirmation sale free and clear under Section 363(f). Here, neither the *Plan* nor the confirmation order provide that the Property would remain property of the estate after confirmation. Accordingly, the Property revested in the Debtors upon confirmation and is no longer estate property for purposes of Section 363(b), (c), or (f).

This conclusion does not mean that a Chapter 12 plan can never provide for a post-confirmation sale. See, *e.g.*, 11 U.S.C. §§ 363(l), 1222(b)(8), 1227. The operative question here, however, is whether the confirmed *Plan* authorizes the sale proposed and the requested free-and-clear relief. It does not. As pertinent here, the *Plan* expressly states that a lump-sum payment of $29,916.81 "will be made by refinance of Debtors' residence through the private banks or by the government assistance" (dkt. #65, p. 4). The additional language that "[i]f at any moment, Debtors decide to sell or refinance there will be no penalties as to the unpaid balance" (dkt. #65, p. 5) does not alter that conclusion. The additional language addresses the absence of a penalty upon an elective sale or refinancing; it does not expressly authorize a post-confirmation sale of the Property, preserve the Property as estate property, authorize a sale free and clear of liens, or

specify the disposition of sale proceeds. Such additional language therefore cannot supply the authority sought in the *Sale Motion*.

Accordingly, the court concludes that Section 363(f) is inapplicable to the proposed post-confirmation sale of property. The court further concludes that the terms of the confirmed *Plan* and the confirmation order do not authorize the sale or the requested free and clear relief sought.

<u>Conclusion</u>

For the reasons stated herein, the *Opposition* (dkt. #155) is hereby GRANTED. Consequently, the *Sale Motion* (dkt. #148) is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September 2026.

